# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| JEFF DAVIS,<br><br>    Plaintiff,<br><br>v.<br><br>CMC IRON WORKS, INC. and CHRISTOPHER CARVER, individually,<br><br>    Defendants. | CIVIL ACTION FILE NO.:<br>2:17-cv-00015-WCO |

## COMPLAINT

Plaintiff, JEFF DAVIS, by and through counsel, hereby files this Complaint against CMC IRON WORKS, INC. and CHRISTOPHER CARVER, in his individual capacity, and alleges as follows:

## INTRODUCTION

1.

This is an action to recover for work that Plaintiff performed for Defendants CMC Iron Works, Inc. ("CMC") and Christopher Carver ("Carver") without proper overtime compensation. For the majority of Mr. Davis' employment from 2014 through his termination in 2016, he was not paid for overtime or any preparatory or concluding activities required for his job. Failure to pay Mr. Davis

for overtime and work hours was in direct violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. (the "FLSA").

## **JURISDICTION AND VENUE**

2.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3.

Venue is proper pursuant to 28 U.S.C. § 1391 in that the unlawful employment practices and the violations of Mr. Davis' rights alleged below were committed in this judicial district.

## **PARTIES**

4.

Plaintiff Davis is a citizen of the United States and the State of Georgia. During the period from March 2014 through approximately June 7, 2016, Mr. Davis was a non-exempt hourly employee entitled to the protections of the FLSA. Plaintiff submits himself to the jurisdiction of this Court.

5.

During his employment, Mr. Davis engaged in regular and recurrent use of the mail, phones, internet, roadways and other channels of interstate commerce in order to perform his job. In addition he regularly worked on and used materials

that traveled in interstate commerce. As a result, Mr. Davis is an employee who is individually covered under the FLSA.

6.

Defendant CMC is a legal entity subject to suit under the FLSA. Defendant is also an "employer" as that term is defined under the FLSA, 29 U.S.C. §203(s), and, therefore, subject to the provisions of the Act relating to payment of minimum wage and overtime compensation. Defendant may be served by delivery of process to its registered agent, Christopher M. Carver, 169 Hembree Road, Maysville, Georgia 30558.

7.

Defendant CMC is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA because it engages in commercial activities involving interstate commerce, has two or more employees who regularly and recurrently engage in interstate commerce or work on or utilize goods or materials that move in interstate commerce and has had a gross annual sales volume exceeding $500,000 in each of the three years preceding the filing of this Complaint.

8.

Defendant Carver is a citizen of the United States and the State of Georgia. During the period from March 2014 through approximately June 7, 2016,

Defendant Carver acted in the interest of an employer toward Plaintiff Davis, exercised responsibility and control over Plaintiff's compensation and terms of employment, and was a corporate officer with operational control of the corporation's covered enterprise. Therefore, Defendant Carver may be held liable in his individual capacity as an "employer" for Defendant CMC's FLSA violation.

9.

Defendant Carver may be served by delivery of process to him at his home or at his business address, 169 Hembree Road, Maysville, Georgia 30558.

### STATEMENT OF FACTS

#### DEFENDANTS BUSINESS OPERATIONS

10.

For at least the relevant period of March 2014 through June 2016, Defendant CMC was in the business of structural steel fabrication, steel cutting and welding, and erection of steel structures, including handrails and building infrastructure on both commercial and residential projects.

11.

Although operating out of a shop in Homer Georgia, Defendant CMC's projects were run throughout Georgia and in multiple States including South Carolina and Pennsylvania.

12.

Defendant Carver is the owner, operator, CEO, CFO and Secretary for Defendant CMC.

13.

Defendant Carver is the Superintendent for all jobs and projects Defendant CMC undertakes and is ultimately responsible for supervising the work on all such jobs and projects.

14.

As the owner, sole officer and Superintendent, Defendant Carver has responsibility for hiring, firing and determining the pay and benefits for all employees of Defendant CMC, including Plaintiff Davis.

15.

Defendant Carver was also ultimately responsible for setting employee hours, coming up with bid prices for jobs and coordinating those jobs and projects Defendant CMC was hired to complete.

16.

On a typical day, Defendant Carver would directed CMC employees to meet at the CMC shop in Homer, Georgia, where materials and equipment were loaded into trucks and employees were driven to worksites around Georgia and sometimes in nearby States.

17.

In order to complete these jobs and projects, CMC employees were required to utilize materials that travelled in interstate commerce, such as bar joists and construction decking, and to operate tools and equipment rented or purchased from out-of-state, like the tension-bolt gun they used regularly.

### PLAINTIFF'S JOB AS AN IRON WORKER

18.

Mr. Davis was hired by Defendant Carver in March 2014 to work for Defendant CMC as an ironworker.

19.

Mr. Davis continued as an ironworker for Defendants through November 2015, at which time Defendant Carver allowed him to work as an Estimator and spend any extra time supervising a job in Snellville. Mr. Davis continued in this Estimator position through his termination on or about June 7, 2016.

20.

Throughout his entire employment, Defendant Carver paid Mr. Davis on an hourly basis, compensating him for the time worked but excluded drive time, certain preparatory and concluding activities in connection with the job, and work at home on estimating projects.

21.

By way of example, on a typical day during the period when he worked as an ironworker, Mr. Davis would leave home and drive the five miles from his house to the company shop in Homer, Georgia, arriving at approximately 5:00 a.m.

22.

Once he arrived at the shop, Mr. Davis would spend 15 to 30 minutes loading the company truck with equipment, hooking up trailers, gathering other employees, and fueling up for the drive to the worksite.

23.

On average, Mr. Davis was driving at least an hour and a half or, if there was heavy traffic, two hours to the worksite.

24.

Mr. Davis would typically work 12 hours with 30 minutes to an hour for lunch then he would drive the hour and a half or two hours, depending on traffic, back to the shop.

25.

Once back at the shop, Mr. Davis would spend 15 to 30 minutes unloading and head home around 8:00 p.m.

26.

While there were a few slow months in late 2014, Mr. Davis was typically working between 60 and 80 hours per week with some weeks exceeding 100 hours.

27.

Mr. Davis was never paid for the time he spent fueling and loading and unloading the trucks.

28.

Mr. Davis was also never paid for any of his daily drive time from the shop to the worksite and back.

29.

In addition, although Mr. Davis was regularly working more than 40 hours in a workweek as an ironworker, he was being paid only straight-time and never any overtime premiums.

PLAINTIFF'S JOB AS AN ESTIMATOR

30.

Beginning in late November or December, 2015, Mr. Davis began working primarily as an "Estimator," with some part-time duties supervising a job in Snellville, Georgia.

31.

In working as an Estimator, Mr. Davis was paid for a maximum of 40 hours per week but no overtime.

32.

Mr. Davis' primary job was to assist Defendant Carver with estimating the price of jobs and spent only about twenty percent of his time supervising the job in Snellville.

33.

About eighty percent of Mr. Davis' time, was spent as an Estimator; however, his job required only that he read the blueprints for a job, count up the necessary steel as reflected on the blue prints and obtain the cost from one primary vendor, SteelMart.

34.

There was a second vendor, Vulcraft, that Mr. Davis was required to use for roofing projects but Vulcraft read the blueprints for the required steel and determined the costs on its own.

35.

Once the costs were received from SteelMart or Vulcraft, Mr. Davis provided them to Defendant Carver so he could calculate the pricing for job proposals.

36.

Although proposals were typed up by Mr. Davis, the pricing and verbiage was determined and supplied by Defendant Carver.

37.

As an Estimator, Mr. Davis' never inspected any worksites.

38.

As an Estimator, Mr. Davis' never determined equipment, labor or installation costs.

39.

As an Estimator, Mr. Davis' never decided payment terms or exclusions.

40.

As an Estimator, Mr. Davis' never performed price comparisons.

41.

As an Estimator, Mr. Davis' never even visited vendors as the representative of CMC; rather, he simply gathered pricing from the two primary vendors, SteelMart and Vulcraft, and passed it along to Defendant Carver.

42.

In fact, in his role as an Estimator, Mr. Davis had no decision making authority whatsoever.

43.

Despite having no decision making authority, Mr. Davis' work as an Estimator necessitated many hours working during the week, both day and night, and on weekends to read lengthy blueprints and tabulate the steel needed for the company's various jobs.

44.

Defendant Carver never paid Mr. Davis for work he performed at home or on weekends in relation to his Estimator job.

45.

In addition, throughout his employment as an Estimator, Defendant Carver never paid Mr. Davis an overtime premium for any of the hours he worked in excess of 40 in a single work week.

46.

To be sure, throughout his entire employment with Defendants CMC and Carver, Mr. Davis never received an overtime premium for any of the hours he worked in excess of 40 in a single work week.

47.

By failing take into account the hours Mr. Davis worked, including the overtime hours, Defendants have failed to properly compensate Mr. Davis by

denying him overtime compensation in violation of his rights as secured by the Fair Labor Standards Act, 29 U.S.C. §207.

48.

Based upon the facts alleged herein, Defendants had no reasonable grounds for believing that refusing to pay Mr. Davis for drive time, preliminary and concluding work and overtime compensation was appropriate under the FLSA. As such, Defendants are not entitled to any reduction in the amount of liquidated damages under 29 U.S.C. § 216(b).

49.

Upon information and belief, in failing or refusing to pay Mr. Davis for drive time, preliminary and concluding work and overtime compensation, Defendants have not relied on any letter ruling from the Department of Labor indicating that Mr. Davis was ineligible for such compensation.

50.

Upon information and belief, in failing or refusing to pay Mr. Davis for drive time, preliminary and concluding work and overtime compensation as required by the FLSA, Defendants have not relied on any legal advice indicating that such practice was permitted under the FLSA.

51.

Mr. Davis has retained the attorney and law firm listed below to represent him in this action and, accordingly, has incurred and will continue to incur attorneys' fees and costs, which are a proper portion of the relief sought in this action.

**COUNT ONE**
**V<span>IOLATION OF THE</span> FLSA – O<span>VERTIME</span> P<span>AYMENTS</span>**

52.

The allegations contained in paragraphs 1 through 51 are hereby incorporated by this reference.

53.

As outlined above, Mr. Davis is a covered employee and each Defendant is a covered employer subject to liability under the FLSA.

54.

As outlined above, Mr. Davis worked a substantial number of overtime hours for which he was not compensated at time and a half pay.

55.

By Defendants' failure and refusal to pay Mr. Davis for the overtime work (time over 40 hours in a workweek) he performed, Defendants have violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 207 and 215.

56.

Defendants' failure to pay Mr. Davis the overtime compensation he was owed was willful and done in bad faith thereby entitling him to all unpaid compensation with interest to date plus liquidated damages all pursuant to 29 U.S.C. §§ 207, 215, 216(b) and 255.

57.

Defendants' failure and continued refusal to pay Mr. Davis the overtime compensation he is due further entitles him to recover his attorneys' fees and costs of this action pursuant to 29 U.S.C. § 216(b).

**RELIEF**

Plaintiff respectfully requests that this Court:

1. Issue a declaratory judgment that Defendants' acts, policies, practices, and procedures complained of herein violated Mr. Davis' rights as secured by the Fair Labor Standards Act of 1938, as amended;

2. Grant Plaintiff a permanent injunction enjoining Defendants, their officers, agents, successors, employees, attorneys, and those acting in concert with them, from further refusal to pay Mr. Davis the compensation he is due and from engaging in any employment practice or policy which discriminates against Mr. Davis or others similarly situated because of his or their opposition to the unlawful practices outlined here or because of his or their participation in this lawsuit;

3. Order Defendants to make Mr. Davis whole by providing for his total lost pay plus interest under Count One for the three years preceding the filing of this Complaint;

4. Grant Mr. Davis liquidated damages under the FLSA in an amount equal to the sum of his lost FLSA wages, including overtime pay;

5. Grant Mr. Davis Moore a jury trial on all issues so triable;

6. Grant Mr. Davis his costs of this action and reasonable attorneys' fees as provided by law; and

7. Grant such additional relief as the Court deems proper and just.

Respectfully submitted this 30th day of January, 2017.

/s/ John F. Beasley, Jr.
John F. Beasley, Jr.
Georgia Bar No. 045010
jfbeasley@jfbeasleylaw.com

JF BEASLEY, LLC
P.O. Box 309
Watkinsville, GA 30677
Telephone:  706-769-4410
Facsimile:   706-769-4471

Counsel for Plaintiff